**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**C. MALONE TRUCKING, INC., Respondent.**

No. 5586.

United States Court of Appeals First Circuit.

April 26, 1960.

James C. Paras, Atty., Washington, D. C., with whom Stuart Rothman, Gen. Counsel, Thomas J. McDermott, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel and Jerome L. Avedon, Attys., Washington, D. C., were on brief, for petitioner.

Frank Daniels, Boston, Mass., for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition for enforcement of an order of the National Labor Relations Board issued in conjunction with the Board's decision, 124 N.L.R.B. No. 48, which found that respondent, C. Malone Trucking, Inc. (hereinafter referred to as the Company) violated Sections 8(a) (1) and (3) of the National Labor Relations Act, 61 Stat. 136 (1947), as amended, 29 U.S.C.A. §§ 158(a) (1), (3) (1958) by the discriminatory discharges of employees Beechim and Crispo, and also Section 8(a) (1) by interrogation by Company president Malone of employees Pooler, Withrow and Crispo.

The primary contention of the respondent Company is that there is no substantial evidence in the record considered as a whole to support the Board's findings of unfair labor practices.[1] The evidence in the record showed the following: employees Beechim and Crispo became interested about September 1957 in having Local 25, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the charging union, hereinafter called Teamsters) represent the employees of the Company rather than the Watch City Independent Chauffeurs, Helpers and Warehouse Union which at the time represented the Company employees and had a collective bargaining contract with the Company. Beechim and Crispo contacted the Teamsters, got authorization cards, and began to sign up their fellow employees. James Feeney, the business agent for the Teamsters, testified that he contacted president Malone within a week before the Teamsters filed a request for certification with the Board on September 26. An organizational meeting of the employees was held about a week before the discharge of employee Beechim, at which John Cardillo, then a foreman of the Company, was present. Employees Pooler and Withrow each testified that he attended a meeting of the employees at the Teamsters office, and that after the meeting president Malone questioned him about the union and about union cards. Pooler and Withrow could not fix the date of the

1. Respondent in its brief presents the question: "Whether substantial evidence had been presented by the Respondent to warrant a finding that the discharges of * * * Beechim and * * * Crispo were for proper cause." However, we believe this inverts the question that is legally before us under the rule of Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, and we shall consider the record as a whole to determine if there is substantial evidence to support the Board's conclusions. N. L. R. B. v. M. & M. Bakeries, 1 Cir., 1959, 271 F.2d 602.

meeting, however. President Malone testified that prior to the notice of filing of the request for certification of the Teamsters, he had not known of employee activity on behalf of the Teamsters.

Employee Beechim was discharged on September 25, 1957. Beechim testified that on the 25th he made several deliveries, that he was delayed at two stops, but that he had called in to the dispatcher of the Company for instructions as he was told to on meeting delays,[2] and that after making the last of his deliveries he was told to report back to the Company yard. There he was told Malone wanted to see him. Malone, he said, accused him of taking too much time to make deliveries; a graph of the truck was examined and he explained to Malone each of the stops and the delays. Beechim said he told Malone that he had called in, and he asked Malone to call the customers to check on the delays, but that Malone said he would not. He said Malone then told the bookkeeper to make up Beechim's money and that Beechim "was through." Beechim said he had been reprimanded once about a year before, but not for delays, and that he had not heard of complaints since. Beechim also explained a delay in another delivery about a week before his discharge, saying that he had to wait for pallets that were not available, and that he had called twice for instructions during the delay of about six hours.

President Malone testified that he had had complaints about Beechim taking too long on twenty to twenty-five occasions during the year previous to Beechim's discharge; that he had spoken to Beechim eight or ten times and to the steward seven to ten times; that when he saw Beechim on the 25th and told him that he was taking too long Beechim said "Oh, no, oh, no," but nothing else. Malone also testified that on calls in to the dispatcher the driver gets instructions on whether to remain or go on; that he had

called a receiver at one of the delivery stops where Beechim had said he was delayed on the 25th and was told that nothing had happened to Beechim that day. However, Malone admitted that he had not called any receiver on the other portion of that same delivery nor called the other stops where Beechim said he was delayed. Malone also stated he had not been paying any particular attention to Beechim's time sheets, despite the asserted complaints of delays. He also testified that during the year prior to Beechim's discharge the Company had fired three truck drivers.

Employee Crispo, who was not present at the hearing, but who had given a deposition, stated that before the second of two organizational meetings of those interested in the Teamsters, he had been called into president Malone's office and asked if he knew of the applications being distributed, and that he had said no. Crispo stated he lied about this matter because he felt he would be fired if Malone knew of his part in getting signatures. Crispo said that he spoke in favor of the Teamsters at the second meeting and that afterwards Malone called him to his office and wanted to know what Crispo was doing after saying he had not signed an application. Crispo said Malone then repeated the substance of what Crispo had said at the union meeting. Crispo said that on November 18 he went to work at 7 a. m. and worked until 10:30 a. m.; that Rizzo, the company dispatcher, then told him that was all for the day, but to call at six o'clock that night; that when Crispo called, Rizzo had told him there was nothing for him the next day. Crispo testified he went to observe the yard the next morning and saw two drivers junior to him given work; that he went to Rizzo to find out about this, and was told to see president Malone. Crispo said he called Malone and Malone told him there would be no work for him. Crispo said that no reason was ever given to him and that he

2. It might be noted that president Malone testified that one of his remarks to Beechim on the 25th was that Beechim

"called up" more than all the other drivers together.

was never involved in an accident while employed by the Company.

In regard to the Crispo discharge, president Malone testified that on November 15, 1957 he had observed Crispo backing into a regular stop and had seen Crispo damage another Company trailer. Malone said he had his brother take a photo of the damaged trailer the next day and that he had waited to see if Crispo would report the accident as company rules required. After three days, Malone said, he called Crispo in and asked him why he had not reported the accident and that Crispo said nothing. Malone testified that he then told Crispo he was being fired as anyone would be who violated the company rule on reporting accidents. On cross-examination Malone admitted that he had not shown the photo to the Board's field examiner.

On the basis of the whole record, and his observation of the various witnesses (except Crispo), the trial examiner concluded that the reasons advanced by Malone as motivating the discarge of Beechim were not the real reasons; that Malone's account of an unreported accident involving Crispo and his discharge of Crispo for this reason was not factual; and that each employee was discharged on account of his activities in behalf of the Teamsters in violation of Section 8(a) (3). The trial examiner also concluded that Malone's interrogation of Pooler, Withrow and Crispo, and the discharge of Beechim and Crispo constituted a violation of Section 8(a) (1). These findings and conclusions were adopted by the Board.

 The credibility of witnesses is for the Board's determination. National Labor Relations Board v. Lunder Shoe Corp., 1 Cir., 1954, 211 F.2d 284. The Board's acceptance of the trial examiner's disbelief in a witness' testimony based on his observance of the witness while testifying in general, is to be overturned only if the finding is incredible on its face. National Labor Relations Board v. Dinion Coil Co., 2 Cir., 1952. 201 F.2d 484. It makes no difference that on

a *de novo* consideration, we might conclude differently than did the examiner or the Board. National Labor Relations Board v. Stanislaus Imp. & H. Co., 9 Cir., 1955, 226 F.2d 377; National Labor Relations Board v. San Diego Gas & El. Co., 9 Cir., 1953, 205 F.2d 471. In the instant case the testimony of the witnesses which were credited by the trial examiner, as against the testimony of the Company's president, affords substantial evidence of the violations found by the Board. Accordingly, we cannot say that the Board's findings are not supported by substantial evidence on the record considered as a whole.

A decree will be entered enforcing the order of the Board.